# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

**Nate Erickson**; **Amanda Horn**; and
**Susan Bristlin** (as joint trustees for
Todd Erickson),

Case No. 19-cv-3061-SRN-LIB

                    Plaintiffs,

v.

**FIRST AMENDED
COMPLAINT
(JURY TRIAL DEMANDED)**

**Pope County, Minnesota**; **Timothy
Riley** (in his official capacity as Pope
County Sheriff); **Todd County,
Minnesota**; **Scott Wright** (in his
official capacity as Jail Administrator
of Todd County Jail); **Steve Och** (in
his official capacity as Todd County
Sheriff); **Grace McCallum** (in her
individual and official capacity);
**Andrew Mattson** (in his individual
and official capacity); and **John and
Jane Does 1-6** (in their individual
and official capacities),

                    Defendants.

---

## INTRODUCTION

1. Todd Erickson was a good man who was singularly devoted to his family.

2. On May 7, 2017, while in Defendants' custody, Erickson died a pointless,

   unnecessary, and preventable death.

3.  A day-and-a-half after he was arrested and jailed for drunk driving, Erickson died from alcohol withdrawal in Defendants' custody.

4.  Despite knowing Erickson needed medical attention, and despite policies requiring that Erickson be sent to detox or an emergency room, Defendants deliberately disregarded Erickson's obvious medical needs and left him to suffer alone and untreated. Defendants' inaction in the face of Erickson's obvious medical needs caused his death.

5.  Erickson was an alcoholic. At the time he came in contact with Defendants, he had been drinking continuously for days.

6.  Defendant McCallum and Doe Defendants 1-3 knew Erickson was an alcoholic. They knew he had been drinking continuously for days. They knew his *greatest fear* was to die alone from alcohol withdrawal. They knew all this because Erickson's girlfriend told them, and she urged them to get him medical attention. But they ignored her.

7.  Defendant McCallum and Doe Defendants 1-3 also knew Erickson was extremely intoxicated. They saw him register astronomical blood-alcohol readings, stumble every time he tried to stand up, and demonstrate his inability to focus his vision, sign his name, or put a belt around his waist. But they ignored these obvious signs of medical need.

8. Defendant Mattson and Doe Defendants 4-6 knew Erickson had a blood alcohol level exceeding .25, which required that he be sent to detox or an emergency room, per official policy. They knew he had seizures in his jail cell. They knew he showed symptoms of delirium tremens, indicating that he experienced severe alcohol withdrawal. But they ignored these obvious signs of medical need.

9. On numerous occasions, Defendants had every reason to know that Erickson needed medical attention. But on every occasion, they looked the other way. They *never* provided Erickson with the medical treatment he needed, even when official policy required them to do so.

10. If not for Defendants' deliberate indifference, Erickson would be alive today. Instead, as a result of individual failures (the Individual Defendants) and institutional shortcomings (the County Defendants), Erickson died a senseless death in his jail cell. Defendants must be held liable.

**JURISDICTION & VENUE**

11. The Court has original jurisdiction over this Complaint under 28 U.S.C. § 1331, because it states federal claims under 42 U.S.C. § 1983.

12. Venue in this Court is proper under 28 U.S.C. § 1391 because Defendants are residents and political subdivisions of this State and District, and the events

and omissions giving rise to Plaintiffs' claims occurred in this State and District.

## PARTIES

13. Plaintiff Nate Erickson is the son of decedent Todd Erickson. Erickson has been appointed as a joint trustee to prosecute civil claims on Todd Erickson's behalf. Erickson is a resident of Willmar, Minnesota.

14. Plaintiff Amanda Horn is the daughter of decedent Todd Erickson. Horn has been appointed as a joint trustee to prosecute civil claims on Todd Erickson's behalf. Horn is a resident of St. Cloud, Minnesota.

15. Plaintiff Susan Bristlin is the former wife of decedent Todd Erickson, and is the mother of Todd Erickson's son, Arn Erickson. Bristlin has been appointed as a joint trustee to prosecute civil claims on Todd Erickson's behalf. Bristlin is a resident of Belle Plaine, Minnesota.

16. Defendant Pope County, Minnesota, is a political subdivision of the State of Minnesota and employs Defendant McCallum and certain Doe Defendants.

17. Defendant Timothy Riley is the Sheriff of Pope County and is responsible for the policies, practices, customs, and training of employees of the Pope County Sheriff's Office.

18. Defendant Todd County, Minnesota is a political subdivision of the State of Minnesota and employs Defendant Mattson and certain Doe Defendants.

19. Defendant Scott Wright is the Jail Administrator of the Todd County Jail and is responsible for the policies, practices, customs, and training of employees of the Todd County Jail.

20. Defendant Steve Och is the Sheriff of Todd County and is responsible for the policies, practices, customs, and training of employees of the Todd County Sheriff's Office.

21. Defendant Grace McCallum is a Sheriff's Deputy for Defendant Pope County. Upon information and belief, Defendant McCallum is a resident of Pope County, Minnesota.

22. Defendant Andrew Mattson is a jailer-dispatcher for Defendant Todd County. Upon information and belief, Defendant Mattson is a resident of Todd County, Minnesota.

23. The Doe Defendants are currently unknown individuals that participated in or contributed to Defendants' deliberate disregard of Erickson's obvious medical need and, thereby, caused his death.

# FACTS

## *Erickson's Arrest*

24. At some time before 9:00 a.m. on May 6, 2017, the Pope County Sheriff's Office received a call about an erratic driver. The caller reported a vehicle crossing the center line and nearly driving into the ditch.

25. At approximately 9:00 a.m., Defendant McCallum responded to the call. When she found the vehicle, she noticed the driver-side mirror dangling from its wires—suggesting the vehicle had been in a collision. She also noticed the vehicle traveling on the wrong side of the road before swerving back to the proper lane.

26. Defendant McCallum pulled the vehicle over in a parking lot. She learned that the driver was Todd Erickson.

27. While interacting with Erickson, Defendant McCallum saw clear signs that Erickson was not simply intoxicated, but *severely* and *dangerously* intoxicated, requiring medical attention. For example:

    a. She "immediately" smelled a strong odor of alcohol when she approached Erickson.

    b. When she asked Erickson how many drinks he had consumed, Erickson said "vodka" instead of answering her question.

c. When she asked Erickson how many vodkas he had consumed, Erickson said he had "a couple" vodkas that day—despite the early hour.

d. Erickson's speech was slurred, and his eyes were bloodshot and watery.

e. Erickson could not step out of his car without balancing himself on the door frame to avoid falling.

f. Erickson could not stand independently. He "stumbled and almost fell to the ground" until Defendant McCallum held onto him for balance.

g. When Defendant McCallum tried to do the "Horizontal Gaze Nystagmus" sobriety test, she observed that Erickson "could not stand without leaning against [her] squad car."

h. During her attempt at the Horizontal Gaze Nystagmus test, Defendant McCallum observed that Erickson couldn't focus his vision on her finger (as required for the test).

i. Due to Erickson's "unsteadiness on his feet," Defendant McCallum determined it would "not be safe" for Erickson to attempt any other sobriety tests.

j. Erickson blew a .327 on his preliminary breath test—over 4 times the legal limit.

k. Erickson told Defendant McCallum, unprompted, that he "drinks a lot."

28. Despite observing Erickson's severe and dangerous intoxication, Defendant McCallum did nothing to seek, request, or provide medical assistance. She looked the other way.

29. Defendant McCallum arrested Erickson for driving under the influence of alcohol.

30. After placing Erickson in the back of her squad car, Defendant McCallum called Erickson's girlfriend, Cindy Klatt.

31. Klatt told Defendant McCallum that Erickson had been drinking since the previous day, had a drinking problem, and required treatment. More explicitly, Klatt told Defendant McCallum that Erickson was concerned about suffering from alcohol withdrawal if he was ever arrested and jailed.

32. Despite learning of Erickson's specific medical needs and his risk of withdrawal, Defendant McCallum did nothing to seek, request, or provide medical assistance. Again, she looked the other way.

### *Booking at Pope County*

33. Defendant McCallum took Erickson to the Pope County Sheriff's Office for booking.

34. During booking, Defendant McCallum saw *even more* signs that Erickson was severely and dangerously intoxicated, requiring medical attention. For example:

a. Erickson could not sign his own name. On the form revoking his driver's license, Erickson only mustered a scribble that bears no resemblance to his signature.

b. Erickson "was unable to stand on his own" and, in fact, "fell over at one point during booking."

c. Erickson could not put a belt around his waist, requiring assistance from a Sheriff's Deputy.

35. Despite these additional observations of Erickson's severe and dangerous intoxication, Defendant McCallum did nothing to seek, request, or provide medical assistance. Again, she looked the other way.

36. During booking, neither Defendant McCallum nor any other officers of Defendant Pope County assessed whether Erickson needed medical assistance or heightened medical-related observation. Nor did Defendant McCallum or any other officers of Defendant Pope County assess Erickson's risk of drug or alcohol withdrawal. *See, e.g.*, Minn. Rs. 2911.2600, subp. 1(I); 2911.5000, subp. 5; 2911.5800, subp. 6.

37. When the booking process was complete, Erickson was sent to the Todd County jail.

*Klatt's Interaction with Doe Defendants*

38. Shortly after Erickson was sent to Todd County, Klatt arrived at the Pope County Sheriff's Office to ask about Erickson.

39. Klatt spoke with Doe Defendants 1-3, who were employed by Defendant Pope County.

40. Like her conversation with Defendant McCallum, Klatt told Doe Defendants 1-3 that Erickson had been drinking for several days and was an alcoholic. Klatt explicitly shared her concern that Erickson would suffer from alcohol withdrawal, and that jail staff wouldn't know how to help him. She told them that Erickson's biggest fear was dying from alcohol withdrawal, and that he needed help to prevent that outcome. In clear terms, Klatt told Doe Defendants 1-3 that Erickson needed medical assistance.

41. Doe Defendants 1-3 ignored her. They brushed her off by remarking that "we've never had anyone die like that" and "we'll take care of it." They told her they would call her after Erickson "sobered up." And they taunted her by joking that Erickson would be in jail for a long time.

42. Despite learning of Erickson's specific medical needs and his risk of withdrawal, Doe Defendants 1-3 did nothing to seek, request, or provide medical assistance. They looked the other way.

43. When Erickson arrived at the Todd County Jail, Defendant Andrew Mattson conducted his intake and booking at approximately 12:42 p.m.

44. The intake and booking process consisted of a questionnaire created by Defendant Todd County, which Defendant Mattson completed based on his observations and the information he received from Defendant Pope County and/or from Erickson.

45. Broadly speaking, the questionnaire has 4 parts. The first relates to custody classification—involving factors ostensibly relating to a propensity for violence or escape. The second relates to mental health issues—involving factors ostensibly relating to schizophrenia, depression, etc. The third relates to visual observations of the arrestee. The fourth relates to medical history.

46. Within the 4 parts, the questionnaire has 3 fields about alcohol use.

47. First, the custody classification part has a field labeled "Alcohol/Drug Abuse." The field assigns a point value if the arrestee's alcohol or drug use has "result[ed] in social, economic, or legal problems (1 pt)" or has "result[ed] in assaultive behavior (3 pts)." When booking Erickson, Defendant Mattson selected the field relating to "social, economic, or legal problems."

48. Second, the mental health part has a field labeled "Officer's Comments/Impressions," which instructs the booking officer to select

applicable characteristics from a list. The list includes "Under the influence of drugs/alcohol." When booking Erickson, Defendant Mattson did not check the box for "Under the influence of drugs/alcohol." By failing to check the box, Defendant Mattson ignored the obvious signs that Erickson was severely and dangerously intoxicated, requiring medical assistance.

49. Third, the visual observation part has fields labeled "Current Alcohol/Drug Use" and "Visible Withdrawal/DT's" on a list of yes/no fields. When booking Erickson, Defendant Mattson wrote "Yes – Arrest time 0903/.123 @ 2344" in the alcohol-use field, and he wrote "No" in the visible-withdrawal field. Interestingly, Defendant Mattson identified Erickson's alcohol use in this field, but not in the "officer's impressions" field addressed above. And the inclusion of a BAC reading time-stamped at 11:44 p.m. (at which time he *still* exceeded the legal limit) demonstrates that nobody determined Erickson's blood alcohol level when he arrived at the Todd County Jail 11 hours earlier.

50. Notably, when booking Erickson, Defendant Mattson referred Erickson for "further mental health evaluation" based on certain non-alcohol-related information. But Defendant Mattson never, in fact, secured a mental health evaluation for Erickson—nor did he secure any other treatment that would have saved his life.

51. At no time during the booking process did Defendant Mattson write anything about the severity of Erickson's intoxication or his need for medical assistance.

52. Nor did Defendant Mattson do anything to seek, request, or provide medical assistance for Erickson. Defendant Mattson's failure to do so was a violation of Defendant Todd County's own policy, which requires that "[a]ll arrestees with a blood alcohol level of .25 or higher and chronic alcoholics **must be taken to Detox or medically cleared**" (emphasis added). The policy also requires that arrestees with the requisite blood alcohol level, or with chronic alcoholism, shall receive "medical recommendations" that the jail "[*m*]*ust follow*" (emphasis added). And all arrestees "shall be required to submit to a test of their breath in order to determine their blood alcohol content." Arrestees that "already submitted to a breath test" when arrested must be treated based on the results of that breath test.

53. Had Defendant Mattson complied with Defendant Todd County's own policy, he would have determined that Erickson's blood alcohol level *was* above .25 and that Erickson *was* a chronic alcoholic. Had Defendant Mattson complied with the policy, Erickson would have received the detox treatment that he needed and would still be alive today. Instead, Defendant Mattson ignored Erickson's severe and dangerous intoxication and did nothing to seek, request, or provide medical assistance. He looked the other way.

54. Defendant Todd County's intake and booking process, as conducted by someone who is not a medical professional, is woefully inadequate for assessing an arrestee's need for medical assistance or heightened medical-related observation. Likewise, as conducted by someone who is not a medical professional, it is woefully inadequate for determining an arrestee's risk of drug or alcohol withdrawal. *See, e.g.*, Minn. Rs. 2911.2600, subp. 1(I); 2911.5000, subp. 5; 2911.5800, subp. 6.

55. Defendant Todd County's failure to train Defendant Mattson and its other officers resulted in Erickson having no access to detox or medical treatment—despite having a blood alcohol level of .327 and being a chronic alcoholic. In this way, Defendant Todd County's failure to train caused Erickson's death.

### Erickson's Custody

56. At approximately 1:00 p.m. on May 6, 2017, Erickson was placed in a jail cell.

57. During Erickson's short period of confinement, Defendant Todd County's officers:

   a. failed to conduct well-being checks at all requisite 30-minute intervals.

   b. logged certain well-being checks that they did not, in fact, conduct.

   c. conducted only cursory well-being checks without actually entering the housing units.

d.  failed to conduct more frequent well-being checks for Erickson specifically, as required for all detainees "potentially … experiencing withdrawal from drugs or alcohol." Minn. R. 2911.5000, subp. 5.

e.  failed to administer Erickson's prescribed medication until nearly 24 hours after his booking, even though he was prescribed to take the medication twice per day.

58. Perhaps most egregiously, at 12:44 a.m. on May 7, 2017, Doe Defendant 4 observed that Erickson experienced "seizure activity." After observing the seizure activity, Doe Defendant 4 made the baffling decision to call the Pope County Sheriff's Office, for unclear reasons. After calling the Pope County Sheriff's Office, Doe Defendant 4 called a hospital but did not request any medical treatment for Erickson.

59. Despite the fact that seizures are a well-known symptom of alcohol withdrawal, and despite the fact that state regulations require medical assistance for arrestees experiencing alcohol withdrawal, and despite the fact that Defendant Todd County's policy requires detox for chronic alcoholics, Doe Defendant 4 did nothing to seek, request, or provide actual medical assistance for Erickson. He looked the other way.

60. At 12:19 p.m. on May 7, 2017, Doe Defendant 5 apparently observed Erickson showing symptoms of delirium tremens—the most severe form of alcohol

withdrawal. After observing Erickson's symptoms, Doe Defendant 5 called a nurse (Doe Defendant 6) to request "advice on DT's"—referring to delirium tremens.

61. The nurse (Doe Defendant 6) told Doe Defendant 5 that Erickson's existing anxiety medication was an appropriate treatment for delirium tremens.

62. In fact, at the dosages actually prescribed to Erickson, the medication is an inappropriate treatment for delirium tremens. And it is a *particularly* inappropriate treatment when administration of the lower dosage has been interrupted—for example, when officers of Defendant Todd County refused to administer the medication for over 24 hours.

63. Upon information and belief, Doe Defendant 5 deliberately failed to give relevant information to the nurse (Doe Defendant 6). Namely, Doe Defendant 5 failed to inform the nurse that Erickson had experienced "seizure activity," had missed prior doses of his medication, was prescribed relatively low dosages of the medication, and was a chronic alcoholic that had been severely and dangerously intoxicated the day before. By deliberately failing to give such relevant information, Doe Defendant 5 was not entitled to rely on the nurse's (Doe Defendant 6's) opinion and was deliberately indifferent to Erickson's obvious medical needs.

64. The nurse (Doe Defendant 6) deliberately failed to *actually examine* Erickson before rendering an uninformed opinion. The nurse (Doe Defendant 6) further deliberately failed to gather or request the information necessary to render a well-informed opinion. By deliberately failing to examine Erickson, or to gather information to render a well-informed opinion, the nurse (Doe Defendant 6) was deliberately indifferent to Erickson's obvious medical needs.

### Erickson's Death

65. At approximately 5:17 p.m. on May 7, 2017, Erickson suffered a second seizure in his jail cell—the result of delirium tremens and alcohol withdrawal. This time, the seizure was fatal.

66. The Medical Examiner attributed Erickson's death to "complications of chronic alcoholism."

67. Erickson's worst fear was realized. Despite Klatt's best efforts to warn Defendants, and despite several opportunities for Defendants to seek, request, or provide life-saving medical assistance, Erickson died of alcohol withdrawal.

## <u>COUNT 1</u>
## VIOLATION OF 4TH AND 14TH AMENDMENTS[1]
## 42 U.S.C. § 1983
## (Defendant McCallum, Defendant Mattson, Doe Defendants 1-6)

68. All paragraphs of this Complaint are fully incorporated herein.

69. Section 1983 provides that state actors who deprive an individual of rights, privileges, or immunities guaranteed under the Constitution shall be liable to the injured party.

70.  A state actor violates an in-custody arrestee's constitutional rights when he or she knows of, but deliberately disregards, the arrestee's objectively serious medical need.

71. An arrestee suffers from an "objectively serious medical need" if a layperson would easily recognize that medical attention is needed. *Dadd v. Anoka Cnty.*, 827 F.3d 749, 755 (8th Cir. 2016).

72. At all relevant times, Erickson's need for medical attention was easily recognizable to a layperson.

73. Namely, a layperson would easily recognize from the following circumstances that a person requires medical attention:

   a.  The person cannot stand without falling.

---

[1] *See Bailey v. Feltmann*, 810 F.3d 589, 592-93 (8th Cir. 2016) (recognizing uncertainty as to whether arrestees' claims of denial of medical care arise under the 4th Amendment or the 14th Amendment).

b.  The person cannot understand simple questions.

c.  The person was involved in a car accident.

d.  The person cannot sign his or her name.

e.  The person displays obvious symptoms of greater-than-usual intoxication—for example an astronomical BAC, an inability to safely perform sobriety tests, or an inability to perform simple tasks without assistance. *See, e.g.*, *Thompson v. King*, 730 F.3d 742, 749 (8th Cir. 2013) ("noticeable symptoms of severe intoxication"); *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("exhibited symptoms of extreme intoxication").

f.  The person is a chronic alcoholic forced to forego alcohol.

g.  The person's loved one specifically communicates the person's risk of withdrawal and gives information to substantiate the risk.

h.  The person has been deemed to require a mental health evaluation.

i.  The person has gone over 24 hours without his or her prescribed medication.

j.  The person suffers a seizure.

k.  The person displays symptoms of delirium tremens—a life-threatening condition.

74. A defendant "deliberately disregards" an objectively serious medical need if he or she is subjectively aware of a medical need but fails to take any action. *Schaub v. VonWald*, 638 F.3d 905, 916 (8th Cir. 2011). Subjective knowledge "may be inferred from circumstantial evidence, or from the very fact that the risk [of harm] was obvious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

75. At all relevant times, Defendants McCallum, Mattson, and Does 1-6 were subjectively aware that Erickson required medical attention, but they still failed to take any action.

76. Namely, Defendants recorded their observations of the following:

   a. Defendant McCallum recorded her observations that Erickson could not stand without falling, could not understand her questions, had possibly been in a car accident, could not sign his own name, and displayed other obvious symptoms of extreme intoxication (including a .327 blood alcohol level and an inability to focus his gaze).

   b. Defendant Mattson recorded his observations that Erickson had a history of alcohol abuse, required a mental health evaluation, had consumed so much alcohol that he continued to have an over-the-limit blood alcohol level 15 hours after his last drink, and was prescribed to take certain medications twice per day.

    c. Doe Defendants 4-5 recorded their observations that Erickson suffered from "seizure activity" in the early-morning hours of his custody and showed symptoms of delirium tremens hours before his death.

77. In addition to their recorded observations, Defendants' subjective knowledge is also clear from circumstantial evidence:

    a. Defendants McCallum and Does 1-3 received information from Cindy Klatt that Erickson had been drinking since the previous day, had a drinking problem, required treatment, and was at risk of severe alcohol withdrawal.

    b. Defendant Mattson was subject to a policy requiring him to send arrestees (like Erickson) to detox or medical treatment if they had a blood alcohol level greater than .25 or were chronic alcoholics.

    c. Defendants Mattson and Does 4-5 had access to all information regarding Erickson's arrest—including the arrest report, which described the severity of his intoxication, and his criminal history, which included so many alcohol-related driving offenses that "any use of alcohol" would invalidate his license.

    d. Doe Defendant 6 opined about Erickson's life-threatening condition (delirium tremens) without actually observing him, knowing the extent

of his symptoms, or considering relative dosages of medication before deeming it "sufficient" to treat the condition.

78. Subjectively knowing all of this information, none of the Defendants *did anything* to ensure Erickson was sent to detox or otherwise received medical care. Instead, they denied him access to the life-saving treatment that he needed. They all looked the other way.

79. Erickson's right to medical assistance under these circumstances was clearly established. *See, e.g., Barton v. Tabor*, 908 F.3d 1119, 1125 (8th Cir. 2018) (*Barton II*) ("failing to seek medical care for an intoxicated arrestee who exhibits symptoms substantially more severe than ordinary intoxication"); *Barton v. Tabor*, 820 F.3d 958, 967 (8th Cir. 2016) (*Barton I*) (same); *Thompson*, 730 F.3d at 750 (same); *cf. Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006) ("knowing failure to administer prescribed medication").

80. Defendants' deliberate indifference to Erickson's objectively serious medical needs was the result of malice and/or reckless disregard for Erickson's rights.

81. Defendants' deliberate indifference to Erickson's objectively serious medical needs was the direct and proximate cause of Erickson's death.

82. Plaintiffs are entitled to recover damages for Defendants' unconstitutional acts and omissions, including punitive damages, costs, and attorney fees.

## COUNT 2
### *MONELL* LIABILITY
### 42 U.S.C. § 1983
### (Defendant Pope County, Defendant Riley, Defendant Todd County,
### Defendant Wright, Defendant Och)

83. All paragraphs of this Complaint are fully incorporated herein.

84. A political subdivision is liable under § 1983 when its policy, practice, or inadequate training causes a constitutional violation. *See, e.g.*, *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

85. Defendants Pope County and Todd County's policies, practices, and inadequate training caused the constitutional violations that resulted in Erickson's death.

86. Defendants Pope County and Todd County owe a duty of care to the arrestees they detain and hold in custody. The duty of care is defined, in part, by state regulations. The duty of care requires Defendants Pope County and Todd County to create policies and practices, and provide training to their officers, to ensure the well-being of all arrestees in their custody. *See, e.g.*, Minn. Rs. 2911.2600, subp. 1; 2911.5000, subp. 5; 2911.5800, subps. 4, 5, 6.

87. Upon information and belief, Defendant Pope County has no policy or practice, and provides no training to its officers, to assess arrestees for medical need. Specifically, Defendant Pope County has no policy or practice, and provides

no training to its officers, to assess whether arrestees require detox or emergency medical treatment to mitigate the risk of withdrawal.

88. As a result of Defendant Pope County's lack of policy or practice, and its failure to train its officers, Defendants McCallum and Does 1-3 violated Erickson's constitutional rights by deliberately disregarding his obvious medical needs.

89. Defendant Todd County has only nominal policies, about which it has established no practice and provides no training to its officers, to assess arrestees for medical need. Specifically, despite the existence of nominal policies, Defendant Todd County has established no practice and provides no training to ensure that its officers administer blood alcohol tests, check previously conducted blood alcohol tests, determine chronic alcoholism status, or otherwise determine whether an arrestee must receive detox treatment as required by its nominal policies.

90. Additionally, Defendant Todd County has no policy or practice, and provides no training to its officers, to ensure that arrestees experiencing life-threatening symptoms receive necessary medical treatment. Specifically, Defendant Todd County has no policy or practice, and provides no training to its officers, to ensure that arrestees receive medical treatment for seizures and delirium tremens before those conditions turn fatal.

91. Defendant Todd County has a documented history of failing to adequately train its officers. Such failures continued despite formal inspections by the Department of Corrections, which demanded that the inadequate training and other deficiencies be brought into compliance.

92. As a result of Defendant Todd County's lack of policy or practice, and its failure to train its officers, Defendants Mattson and Does 4-6 violated Erickson's constitutional rights by deliberately disregarding his obvious medical needs.

93. Plaintiffs are entitled to recover damages for Defendants Pope County and Todd County's unconstitutional acts and omissions, including costs and attorney fees.

## COUNT 3:
### NEGLIGENCE AND WRONGFUL DEATH
### Minn. Stat. § 573.02
### (All Defendants)

94. All prior paragraphs of this Complaint are fully incorporated herein.

95. Minn. Stat. § 573.02 provides a wrongful death action for surviving kin. A plaintiff who alleges negligence in a wrongful-death action must prove that: 1) the defendant had a duty; 2) the defendant breached that duty; 3) there was a death; and 4) the breach of duty caused that death. *Stuedemann v. Nose*, 713 N.W.2d 79, 93 (Minn. Ct. App. 2006).

96. Defendants had a duty to care for, protect, and provide medical treatment to Erickson while he was in their custody. *See, e.g., Thomsen v. Ross*, 368 F. Supp.

2d 961, 978 (D. Minn. 2005) (citing authority). They also had a specific duty to care for him because they could reasonably foresee his obvious need for medical attention. *Cooney v. Hooks*, 535 N.W.2d 609, 611 (Minn. 1995). Namely, Klatt warned them, Erickson's observable symptoms were obvious, jail policy required protective measures, and jail staff even recorded their knowledge of his symptoms, including seizures and delirium tremens, before he died.

97. A breach occurs when a defendant engages in an act or omission that it has "reasonable ground to anticipate … would or might result in *any* injury" to the plaintiff, even if it has no reasonable ground to anticipate "the particular injury which did happen." *DeLuna v. Mower Cnty.*, 936 F.3d 711, 716 (8th Cir. 2019) (quoting *Christianson v. Chi., St. P., M. & O. Ry. Co.*, 69 N.W. 640, 641 (1896)).

98. Defendants had reasonable grounds to anticipate that Erickson's withdrawal from alcohol during confinement would kill him because Klatt specifically warned them. Moreover, even if Defendants didn't anticipate that Erickson's alcohol withdrawal would kill him, they had reasonable grounds to anticipate *some* injury by confining Erickson and not seeking medical treatment. Their own intake questionnaires seek information on BAC level and alcohol use. Their own policies mandate sending inmates with a high BAC to Detox.

99. If a defendant's "act itself is negligent, then the [defendant] is equally liable for all its natural and proximate consequences, whether he could have foreseen

them or not." *DeLuna*, 936 F.3d at 716 (quoting *Dellwo v. Pearson*, 107 N.W.2d 859, 861 (Minn. 1961)).

100.    As a natural and proximate consequence of Defendants' negligence in failing to provide Erickson medical treatment and attention, he died in their custody due to complications of alcohol withdrawal.

101.    Defendants' own polices and well-established law required Defendants to provide medical attention to Erickson.   Their failure to provide medical treatment to Erickson in spite of his obvious need, their own policies, and well-established law renders their actions willful and malicious.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Nate Erickson, Amanda Horn, and Susan Bristlin, as joint trustees for Todd Erickson, request that this Court:

A.  Enter judgment in favor of Plaintiffs and against Defendants;

B.  Award compensatory damages in such amount as the jury may determine;

C.  Award punitive damages on Count 1 in such amount as the jury may determine;

D.  Award pecuniary damages on Count 3 for loss of income contribution, advice, counsel, and loss of companionship;

E.  Grant injunctive, declaratory, or other equitable relief to ensure Defendants cease further unlawful action similar to what is alleged in this Complaint—

including, but not limited to, creation of or changes to policies and procedures and mandatory training to ensure proper medical assistance is given to arrestees and detainees with objectively serious medical needs;

F.  Award costs, interest, and attorneys' fees; and

G.  Award any and all additional relief supportable in law or equity.

Plaintiffs demand a jury trial.

Dated: March 27, 2020                                **MADIA LAW LLC**

                                                     s/Zane Umsted
                                                     J. Ashwin Madia, MN No. 0321187
                                                     Zane Umsted, MN No. 0398761
                                                     323 Washington Ave. N., Ste 200
                                                     Minneapolis, MN 55401
                                                     Telephone: 612.349.2743
                                                     Fax: 612.235.3357
                                                     Email:  zaumsted@madialaw.com
                                                     **ATTORNEYS FOR PLAINTIFF**